**SIGNED THIS: July 19, 2006**

_____
        **MARY P. GORMAN**
   **UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

```
In Re                              )
                                   )   In Bankruptcy
THOMAS KEITH COATNEY and           )
ALLISON JEAN COATNEY,              )   Case No. 05-75280
                                   )
           Debtors.                )
_____)
                                   )
THOMAS KEITH COATNEY and           )
ALLISON JEAN COATNEY,              )
                                   )
           Plaintiffs,             )
                                   )
    v.                             )   Adversary No. 06-7008
                                   )
UNITED STATES DEPARTMENT OF        )
   EDUCATION,                      )
                                   )
           Defendant.              )
```

# O P I N I O N

This issue before the Court is whether the repayment of a debt

for a student loan would impose an undue hardship on the Debtor and his dependents so as to render the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

Thomas Coatney and his wife, Allison Coatney, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 26, 2005.  The Debtors have six children ranging in age from four to fifteen.  Mr. Coatney works as a newspaper courier and makes $560 per month.  Mrs. Coatney works as an LPN and makes $740 net per month.  In addition, the family receives $1,072 per month in Social Security benefits for four of their children.  Thus, the family has combined monthly income of $2,372.  The Debtors scheduled their monthly expenses in September, 2005 at $2,100.

At the time of filing, the Debtors lived in a $60,000 house with a $58,000 mortgage.  They owned a 1996 Oldsmobile van with over 100,000 miles.  Mr. Coatney has $70,000 in a United Methodist Church pension plan.  The Debtors scheduled a total of $228,966.22 in unsecured debt with the largest portion being $119,285.49 owed to the United States Department of Education for Mr. Coatney's student loan consolidation.[1]  It is this debt that is the subject of this adversary proceeding.

---

[1] This case was captioned as having been brought by both debtors.  The obligation sought to be discharged appears from all of the testimony and documentary exhibits to be owed solely by Thomas Coatney. The Court will, therefore, proceed by referring to Mr. Coatney as the sole plaintiff.

At trial, Mr. Coatney testified that he is 42 years old. He has been married to Allison for seven years. He has three children from his first marriage; that marriage ended when his wife was killed in an automobile accident. Mrs. Coatney has a child from a previous relationship. The Debtors have two children together.

At the time they filed their bankruptcy petition, the Debtors were living in Beardstown where their mortgage payments were $375 per month. After surrendering that home, they are now living in Virginia, Illinois and paying monthly rent of $500. They are no longer paying $100 per month for satellite television, but they are paying $300 per month for an additional vehicle - a Kia Sedona with over 50,000 miles - and their transportation costs have increased because of the rise in fuel prices. Mr. Coatney's job as a newspaper courier requires him to pay his own automobile expenses.

Mr. Coatney has worked for the Jacksonville Journal Courier for three years. He previously worked for Heritage Enterprises in Bloomington. He also served as a student minister for the United Methodist church.

Mr. Coatney has a bachelor's degree in communications. In addition, he almost has sufficient credits for a degree in ministry.

Mrs. Coatney works as an LPN. She works from 6:00 a.m. to 2:30 p.m. Mr. Coatney works from 1:30 a.m. to 8:30 a.m. or 9:30 a.m. They have followed this scheduled since they were married in

order to have someone at home with the children during the day.

In April, 2004, Mr. Coatney applied for the Income Contingent Repayment Plan ("ICRP").  ICRP is a program developed by Congress to provide a payment alternative for student loans which allows payments to be made by borrowers based on their ability to pay. *See* 34 C.F.R. § 685.209; In re Korhonen, 296 B.R. 492, 496 (Bankr. D. Minn. 2003).  Pursuant to this program, the annual amount payable by a student loan borrower is the lesser of (i) the amount the borrower would repay annually over twelve years, or (ii) twenty percent of discretionary income.  A debtor's income is examined each year to determine his level of payment.  After a maximum period of 25 years, any unpaid amount is canceled.  However, the amount forgiven is taxable income.  *See* 34 C.F.R § 685.209; 26 U.S.C. § 61(a)(12); In re Thomsen, 234 B.R. 506, 509-10 (Bankr. D. Mont. 1999); Korhonen, *supra*, 296 B.R. *at* 496.

Mr. Coatney's application to participate in the ICRP was accepted by the United States.  Since that time, Mr. Coatney has not been required to make any payments on his student loan. Meanwhile, interest on the loan is still accruing.  As of January 31, 2006, the amount due on the loan was $120,373.94.  Mr. Coatney is enrolled in the ICRP for another 18 years.  At the end of 18 years, any remaining debt will be forgiven regardless of the amount he has actually paid.  The forgiven amounts will, however, be reported as forgiveness of indebtedness income which is subject to

-4-

being taxed as ordinary income. 26 U.S.C. § 61(a)(12).

The Debtor seeks to discharge his debt to the United States Department of Education pursuant to 11 U.S.C. § 523(a)(8) which, prior to amendment effective October 17, 2005,[2] provided as follows:

> (a) A discharge under section 727. . . does not discharge an individual debtor from any debt –
>
> > (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or nonprofit institution, or for an obligation to repay funds received, as an educational benefit, scholarships, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

The determination of whether there is undue hardship under § 523(a)(8) requires a three-pronged inquiry. In re Roberson, 999 F.2d 1132 (7th Cir. 1994). First, the Debtor must show that his current financial condition precludes him from maintaining a minimal standard of living for himself and his dependents if forced to repay his student loan. Second, the Debtor must show that additional circumstances exist which indicate that his current financial condition is likely to exist for a significant portion of the repayment period. Third, the Debtor must demonstrate that he

---

[2] This case was filed on September 26, 2005. Accordingly, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act which took effect on October 17, 2005 do not apply.

has made a good faith effort to repay his loans.  Id. *at* 1135; Goulet v. Educational Credit Management Corp., 284 F.3d 773, 777 (7th Cir. 2002); In re Simmons, 334 B.R. 632, 635 (Bankr. C.D. Ill. 2005).

The United States Department of Education conceded the good faith issue at trial.  Although the Debtor has only paid $45.26 toward the loan, the Debtor's enrollment in the ICRP establishes good faith to the satisfaction of the United States.

The first prong of the Roberson test requires an analysis of the Debtor's current standard of living.  In order to satisfy this first element, the Debtor must show that he lacks the present ability to repay the loan and, at the same time, maintain a minimal standard of living for himself and his dependents.  Roberson, *supra*, 999 F.2d *at* 1135.

In deciding whether the Debtor can maintain a minimal standard of living if required to repay the student loan, the Court must examine the Debtor's monthly income and expenses.  As set forth above, the Coatney family has combined monthly income of $2,372. The family now has current monthly expenses of $2,485.  This sum includes $500 rent, $600 for food for the family of eight, almost $400 in car payments on high mileage vehicles, and another $300 in transportation costs.  The Debtors have given up their one luxury-satellite television.  They do not have life, health, or renter's insurance.  Accordingly, the Debtors do not have monthly income in

excess of their living expenses.

The United States argues that the Debtor cannot establish any present financial hardship because his payments are zero under the ICRP. That is not the Roberson test. The test is whether the Debtor's current financial condition precludes him from maintaining a minimal standard of living if forced to repay his student loan. This question can only be answered in the affirmative. If forced to repay the student loan, this Debtor and his family would not be able to maintain a minimal standard of living. The ICRP's current determination that no payments are due according to its program guidelines is not a substitute for this Court's analysis of what the Debtor's situation would be if he had to make payments on his student loans. In re Durrani, 311 B.R. 496, 506-7 (Bankr. N.D. Ill. 2004). This Debtor has met his burden of proof on the first prong.

The second prong of the test requires an analysis of the factors that contribute to a debtor's inability to pay a loan and a determination of whether additional circumstances exist which indicate that his state of affairs will likely persist for a significant portion of the repayment period. A debtor must demonstrate the "certainty of hopelessness" - not just a present inability to fulfill the financial commitment - in order for payment of the student loan to be considered an undue hardship. Goulet, *supra*, 284 F.3d *at* 778. "'Certainty of hopelessness' is a

-7-

tough standard and one that can generally only be met by the truly disabled or debtors whose repayment periods have already run so that the certainty of their inability to pay for the entire period is a matter of fact rather than speculation." Simmons, *supra*, 334 B.R. *at* 636.

Neither party introduced into evidence the Debtor's original loan documents and no evidence was presented regarding the original repayment period. The Debtor has 18 years left on his ICRP repayment period but it is unclear to this Court how or whether that 18 years corresponds to the original repayment period. Determination of the original loan repayment period is critical to the analysis of the second prong of the test and, without any evidence on that issue, the Court cannot find that the Debtor has met his burden of proof.

Mr. Coatney is an articulate 42 year-old man. He has one college degree in communications and is close to attaining a second degree in ministry. No evidence was presented of any health or any other problems which impair the Debtor's ability to work.

The Debtor's financial problems are related, in part, to the size of his family - he and his wife have six children to support. However, the Debtor will not have to support these children indefinitely. The two oldest children are 14 and 15. His support obligations for these children will end in four years. The Court notes, however, that these older children receive Social Security

benefits due to the death of their mother. As they become adults, those benefits, which are now used for overall family support, will end. There may not, however, be a corresponding reduction in family living expenses.

Nevertheless, this Court cannot find a "certainty of hopelessness." Mr. Coatney has a good education, good health, and usable job skills. Mr. Coatney has not met his burden of proof to show that additional circumstances exist indicating that his state of affairs is likely to persist for a significant period of his repayment period. As stated above, he failed to clearly establish what that repayment period is and provided no evidence of any disability or other factor which will limit his ability to work.

Notwithstanding the foregoing, the Court is concerned that the Debtor could face a huge tax liability for imputed income in 18 years at the termination of his ICRP payment period. The Debtor's consolidated student loan debt is currently over $120,000, and interest continues to accrue. At the end of 18 years, the unpaid balance will be written off, but the written off debt will constitute income to the Debtor for tax purposes. 34 C.F.R. § 685.209(c)(4)(iv); 26 U.S.C. § 61(a)(12). Considering the amount of the debt, the accruing interest on the debt, and the Debtor's present circumstances, the Debtor could face undue hardship if required to pay taxes on the written-off balance in 18 years. This makes continued participation in ICRP risky for the Debtor. If Mr.

Coatney continues to participate and is determined each year to be unable to make payments, then he will have hundreds of thousands of dollars of debt forgiven in 18 years, which will certainly result in, at least, tens of thousands of dollars in nondischargeable income taxes becoming due. 11 U.S.C § 523(a)(1).  Although mandated by tax law, this is an unfortunate result after full cooperation with and participation in the ICRP for 18 years.  Because of the potential tax consequences, this Court will not compel Mr. Coatney to remain in the ICRP as his sole remedy to address his current inability to pay his student loans.

Although Mr. Coatney is certainly free to continue in the ICRP, this Court will also grant Mr. Coatney a four-year deferment of payments on his loans.  The Seventh Circuit has approved of the deferment concept. Roberson, *supra*, 999 F.2d *at* 1138.  This Court will grant Mr. Coatney a deferment of payments on his student loans until July 15, 2010.  If Mr. Coatney believes that he is in need of further relief from this Court at the end of the deferment period, he may petition to reopen his bankruptcy case. Id.; Fed.R.Bankr.P. 4007(b).  Relief at that time could consist of further deferment or complete or partial discharge.  Some courts have combined a partial discharge with continued participation in ICRP and this Court might consider such a remedy, if appropriate, in the future.  *See* In re Grove, 323 B.R. 216 (Bankr. N.D. Ohio 2005).

This Opinion is to serve as Findings of Fact and Conclusions

of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###